# EXHIBIT A

| **Verified Facts Presented by Plaintiffs**[1] | **SEC's Position** | **SEC's Verified Evidence in Support of its Position** |
|---|---|---|
| 1. An SEC enforcement action against Feingold or BSI will trigger events of default and lead to multiple unnecessary failures of businesses that would otherwise be profitable.<br>Complaint, ¶ 13, p. 9 (ECF No. 1);<br>Feingold Decl., ¶ 4, p. 3 (ECF No. 4-5). | Denied | None |
| 2. Feingold is not an owner or control person of BSGF or BSGM. All private placement and investor documents provided for signature to any investors in BSGF or BSGM show that only Joseph and Steven Baldassarra are fund managers and are the only ones with decision making power and authority regarding BSGF or BSGM. Feingold:<br><br>a. does not have any decision-making power or authority regarding BSGF;<br><br>b. does not have any decision making power or authority regarding BSGM;<br><br>c. does not have a physical office at BSGF;<br><br>d. does not have a physical office at BSGM;<br><br>e. does not have any email he uses that ends with Broadstreetglobalfund.com or Broadstreetglobalmanage-ment.com as the actual officers of such entities may have;<br><br>f. has no signature authority on any bank account of BSGF;<br><br>g. has no signature authority on any brokerage account of BSGF;<br><br>h. has no signature authority on any bank account of BSGM; | Denied | None |

[1] Plaintiff's Initial Complaint ("Complaint") (ECF No. 1) and Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("TRO") (ECF No. 4-4) are verified by Feingold Decl. of the Appendix to the TRO ("Feingold Decl.") ¶11, p. 7 (ECF No. 4-5).

| | | |
|---|---|---|
| i. has no signature authority on any brokerage account of BSGM;<br><br>j. has never signed a federal or state tax return for BSGF;<br><br>k. has never signed a state tax or federal tax return for BSGM;<br><br>l. went to work at B.S.I. in 2022 when BSGM and BSGF were formed well before his arrival and BSGF and BSGM already existed with their own officers and directors prior to Feingold;<br><br>m. has never appeared in or signed any corporate resolution for BSGF;<br><br>n. has never appeared in or signed any corporate resolution for BSGM;<br><br>o. was hired to work at B.S.I. in 2022 for the purpose of overseeing the Projects as a result of his education, training and experience involving complex real estate developments and transactions; and<br><br>p. is paid in a completely separate manner from a completely separate bank account than the officers, directors and control persons of BSGM and BSGF.<br>TRO, ¶6, p.8-9 (ECF No. 4-4). | | |
| 3. BSI is distinct and separate from BSGF and BSGM.<br>TRO, ¶4, p.6 (ECF No. 4-4). | Denied | None |
| 4. BSI is not in the securities business.<br>TRO, ¶7, p.9 (ECF No. 4-4). | Denied | None |
| 5. BSGF is exempt from the Investment Company Act of 1940 and thereby need not register any of its securities with the SEC.<br>Complaint, fn. 1 ¶4, p. 4 (ECF No. 1) | Denied | None |
| 6. The SEC has:<br><br>a. advised that because of Plaintiffs' (the Broadstreet organization's) large business size and substantial assets, the SEC must | Denied | None |

| | | |
|---|---|---|
| continue to investigate—including explicitly stating that if the Broadstreet organization was worth substantially less than it is, it would have ended the investigation already and taken no action.<br><br>b. provided explicit directives regarding how Plaintiffs should run their private businesses, which has thwarted Plaintiffs from expanding or operating their businesses as effectively as possible and dictating operations.<br><br>c. indicated it would require more comprehensive fee disclosures to BSGF's investors, beyond the fee formulas for which the investors have agreed.<br><br>d. dictated the amount and manner in which BSGF may pay its managers and related service providers even though agreed to by its investors.<br><br>e. dictated how investments are collected and distributions are deployed, again, despite investor-specific signed approval of such.<br><br>f. dictated the specific way investors may review and approve disclosures, that is, for example, objected to disclosures being in a data room and incorporated by reference into PPM documents, although investors have accepted the same process.<br><br>g. rejected Plaintiffs' voluntary offers of information—that is, to educate the SEC, and instead chose to subpoena third-parties for those identical records, causing a strain, and sometimes, a total loss of the relationships with the third-parties.<br><br>h. repeatedly asked for numerous documents/information that have already been produced to the SEC and that are in possession of the SEC. | | |

| | | |
|---|---|---|
| i. required sittings of investigative testimony from Plaintiffs—in which the SEC posed similar questions on the same topics for which the witnesses have already provided answers—to attempt to elicit and manufacture any inconsistent testimony.<br><br>j. demanded, under a threat of a subpoena enforcement action, that Plaintiffs waive the attorney-client privilege concerning conversations between employees or agents of the entities and their legal counsel and received attorney-client privileged information, and attempted to use such information even though no waiver was ever agreed to.<br><br>k. interrupted witness testimony and demanded inopportune breaks to keep unfavorable testimony (that is, unfavorable to the SEC's theories) from Plaintiffs off the record.<br><br>l. claimed interchangeably the applicability of the SEC Rules of Practice to parts of its investigation but then claimed certain protections under the Federal Rules of Evidence or Federal Rules of Procedure for SEC's convenience.<br><br>m. admonished—in lieu of any substantive response—Feingold for sending a letter to the SEC (Exhibit "A"), which outlined and indicated that Plaintiffs are "ready, willing and able" to resolve the matter but are critical of the SEC.<br><br>n. rejected Plaintiffs' offer to provide contextual information about a questionable witness (the Witness) on which the SEC relies on for information about Plaintiffs' businesses—a former business associate witness with unsavory connections who has used illegal tactics to extort Plaintiffs in a separate, unrelated litigation. | | |

| | | |
|---|---|---|
| o. shared details of this "private" investigation with the above-mentioned Plaintiffs' litigation adversary, in violation of SEC rules of privacy.<br><br>p. increased retaliatory action, including refusing to have open and accessible contact and resolution communications as directed in the SEC's rules, after Plaintiffs hired a well-known lawyer. This lawyer had previously been involved in proceedings that resulted in the termination of SEC officials after lies that those officials had made to a federal judge were exposed.<br><br>q. forced involuntary disclosures of the attorney-client privilege by using other divisions of the SEC, including the division responsible for brokerage firm oversight and regulation, to collect emails and documents from businesses communicating with attorneys and which are owned by the Plaintiffs so they can see confidential information. After using such confidential documents at depositions, and being warned of their improper conduct, the SEC days later feigned ignorance of any improper collection of privileged information.<br><br>r. refused to reschedule depositions to allow them to take place with all counsel present, resulting in counsel's only option for appearance to be by video due to scheduling conflicts. The SEC then refused to accommodate counsel appearing by video by refusing to allow counsel to see the exhibits used in depositions.<br><br>s. indicated that it set a deadline for filing an action against Plaintiffs despite acknowledging that it does not have all documents in its investigation completely reviewed, and that the decision of whether to file the action will be decided without complete review of the documents.<br><br>Complaint, ¶11, p. 7-9 (ECF No. 1) | | |