IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| BROADSTREET, INC., BROADSTREET GLOBAL FUND, L.L.C., BROAD STREET GLOBAL MANAGEMENT, L.L.C., DAVID FEINGOLD, JOSEPH BALDASSARRA, and STEVEN BALDASSARRA, § § § § § § § Plaintiffs, § § vs. § § SECURITIES AND EXCHANGE COMMISSION, § § § Defendant. § | Civil Action No. 4:24-cv-00803-O |

# ORDER

Before the Court are Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 4-4), filed August 22, 2024; the Securities and Exchange Commission's Opposition to Plaintiffs' Motion (ECF No. 18-2), filed September 20, 2024; and Plaintiffs' Reply (ECF No. 28-3), filed October 18, 2024. For the reasons stated herein, Plaintiffs' Motion is **DENIED**.

## I. FACTUAL BACKGROUND[1]

Broadstreet is an "equity provider for the largest land infrastructure developer in the Carolinas."[2] The private equity side of the business is known as Broadstreet Global Fund ("BSGF"), and is run by brothers, Steven and Joseph Baldassarra. On the other side of the business, receiving BSGF investor funds, is Broadstreet, Inc. ("BSI"), which creates the infrastructure for housing development projects. David Feingold is BSI's CEO.

---

[1] Unless otherwise noted, all facts are taken from Plaintiffs' Complaint. Pls.' Compl. 1, ECF No. 1.
[2] BROADSTREET, https://broadstreetprivateequity.com/firm-overview/ (last visited Nov. 15, 2024).

1

Each of these individuals and entities has been under investigation by the Securities and Exchange Commission ("SEC") for alleged violations of securities laws. According to Plaintiffs, the SEC seeks to regulate the Broadstreet entities together, as if it can. But BSGF, BSI, and David Feingold are outside the ambit of entities or individuals the SEC may regulate.

First, BSGF is a private fund that does not sell securities to retail investors. The SEC has dictated the amount and manner in which BSGF may pay its managers and related service providers, how investments are collected and distributions are deployed, and the specific way investors may review and approve disclosures. But Plaintiffs assert that the Fifth Circuit blocked the SEC's similar attempt to regulate private funds in *National Association of Private Fund Managers v. Securities & Exchange Commission*, 103 F4th 1097, 1111 (5th Cir. 2024). Second, BSI is a real estate company and not a securities business. Because the SEC's authority is limited to regulating securities, BSI and its CEO, David Feingold, allege they are wrongfully under investigation.

Not only is the SEC investigating Plaintiffs under questionable authority, but Plaintiffs allege that the SEC "has also used abusive tactics to sustain and extend" its "reputation-damaging investigation." The SEC has conducted a formal investigation for nearly two years. The SEC has directed Plaintiffs not to change their corporate structure or hold major corporate events while under investigation. It has refused Plaintiffs' voluntary production of records and instead served Plaintiffs' banks and business associates with subpoenas. As a result, several banks and professionals terminated their relationship with Broadstreet entities. And the SEC has required David Feingold to testify over five days, among other unreasonable conduct.

Plaintiffs claim that the SEC continues to target Plaintiffs' businesses because of their size and the amount of assets Plaintiffs control. And they further claim that an enforcement action will

2

trigger the default provisions in their business contracts, halting construction of "nearly 30,000 homesites and the loss of at least 2500 jobs."[3] Plaintiffs filed a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction to restrain the SEC from (1) instituting an enforcement action against Feingold and BSI, (2) regulating the internal governance structure of the Broadstreet entities, and (3) imposing disclosure and reporting requirements not authorized by recent Fifth Circuit case law, and (4) violating Plaintiffs' constitutional rights.[4] The Motion is now ripe for the Court's review.

## II.    LEGAL STANDARD

The Court should issue a preliminary injunction only if the movants establish (1) a "substantial likelihood of success on the merits"; (2) a "substantial threat of irreparable harm"; (3) that the balance of hardships weighs in their favor; and (4) that the issuance of the preliminary injunction will not disserve the public interest. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). The first two factors are most critical, and the latter two merge when the government is an opposing party. *Valentine v. Collier*, 956 F.3d 797, 801, 804 (5th Cir. 2020).

A temporary restraining order is "'simply a highly accelerated and temporary form of preliminary injunctive relief,' which requires that the party seeking such relief establish the same four elements for obtaining a preliminary injunction." *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021) (quoting *Hassani v. Napolitano*, No. 3:09-cv-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009)).

## III.    ANALYSIS

---

[3] Pls.' Mot. for TRO and Prelim. Inj. ¶ 5, ECF No. 4-4.
[4] *See id.* at ¶¶ 1–9; *see also* Pls.' Reply 4, n.2, ECF No. 28-3 (clarifying the relief that Plaintiffs seek).

Plaintiffs, having been under investigation by the SEC for the past two years, now seek injunctive relief on their common law *ultra vires* claim to prevent the SEC from continuing its investigation or bringing an enforcement action against Plaintiffs. The Court held a hearing,[5] in which Plaintiffs argued that the SEC lacks express statutory authority to regulate infrastructure groups (*i.e.*, BSI and BSI's CEO, David Feingold) and private funds (*i.e.*, BSGF). Because Plaintiffs fail to demonstrate a likelihood of success on the merits of this claim, the Court **DENIES** their Motion.

### A. Plaintiffs fail to show a likelihood of success on the merits.

Defendant argues that Plaintiffs are not likely to succeed on the merits because sovereign immunity bars Plaintiffs' *ultra vires* claims.[6] The Administrative Procedure Act ("APA") and the common law are distinct sources for *ultra vires* claims, and each entails a unique avenue for overcoming sovereign immunity. *See Apter v. Dep't of Health & Hum. Servs.*, 80 F.4th 579, 587 (5th Cir. 2023). Despite Plaintiffs bringing *ultra vires* claims under both the APA and the common law in their Complaint, Plaintiffs abandoned their APA *ultra vires* claim for purposes of injunctive relief during the hearing. Therefore, the Court need not address the APA's sovereign immunity waiver. It only addresses the common law version of that doctrine, which Plaintiffs now exclusively rely on for temporary relief.

The Court holds that Plaintiffs fail to show a likelihood of success on the merits because it is not clear under Fifth Circuit precedent that this claim remains following the amendment of the APA in 1976. *Id.* at 593 (quoting *Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985)). And even

---

[5] Min. Entry, Nov. 14, 2024, ECF No. 36.

[6] Def.'s Resp. 9–14, ECF No. 18-2. Defendant also argues that the SEC's decision to investigate is "committed to agency discretion by law" and that Plaintiffs' claim is not ripe, but because Plaintiffs cannot overcome sovereign immunity, the Court need not address Defendant's remaining arguments. *Id.* at 12–14, 16–20.

if an implied *ultra vires* claim were cognizable under the common law, Plaintiffs have not shown that they can prevail on the merits of that claim.

### 1. The Fifth Circuit and the common law *ultra vires* doctrine.

Sovereign immunity does not apply in the context of common law *ultra vires* claims because of the legal fiction recognized in *Ex parte Young*, 209 U.S. 123, 159 (1908). That is, "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions." *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011) (quoting *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949)). Thus, under the common law, the protection of sovereign immunity does not extend to actions "'without any authority whatever,' or without any 'colorable basis for the exercise of authority.'" *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n. 11 (1984)).

Notwithstanding this exception to sovereign immunity, there is ongoing debate as to whether the common law *ultra vires* doctrine survived the passage of the APA.[7] The APA provides an independent cause of action for an *ultra vires* suit, and the common law's fiction surrounding sovereign immunity does not apply to APA *ultra vires* claims.[8] A plaintiff bringing an *ultra vires* action under the APA must meet the terms of the APA's sovereign immunity waiver.[9]

Given the APA's provision for judicial review of *ultra vires* acts, the Fifth Circuit has questioned the continued viability of the common law version of the *ultra vires* doctrine. *See Apter*, 80 F.4th at 593 ("[U]nder our precedent, Congress apparently 'd[id] away with the *ultra vires* doctrine and other fictions surrounding sovereign immunity' when it amended the APA in 1976." (second alteration in original) (quoting *Geyen*, 775 F.2d at 1307)). Even in circuits that still

---

[7] *See generally* Alexandra Nickerson, *Ultra-APA Ultra Vires Review: Implied Equitable Actions for Statutory Violations by Federal Officials*, 121 COLUM. L. REV. 2521 (2021).
[8] 5 U.S.C. § 706(2)(c) (APA's *ultra vires* action); 5 U.S.C. § 702 (APA's sovereign immunity waiver).
[9] 5 U.S.C. § 702.

recognize common law *ultra vires* claims, they do so only when review under the APA is unavailable. *See id.* (collecting cases in the D.C., Eleventh, Ninth, Fourth, and Second Circuits).

Here, Plaintiffs fail to show why this Court should recognize their common law *ultra vires* claim and the associated "fictions surrounding sovereign immunity" given this Circuit's questions surrounding that doctrine. *Geyen*, 775 F.2d at 1307. Even if the Court were to follow the approach of other circuits in recognizing common law *ultra vires* claims only when APA review is unavailable, Plaintiffs have made no argument that they are unable to bring a challenge under the APA because, for example, another statute forecloses it. *C.f. Fed. Express Corp. v. United States Dep't of Com.*, 39 F.4th 756, 763 (D.C. Cir. 2022) ("FedEx is unable to bring a traditional [APA] challenge to Commerce's interpretation of its regulation because the 2018 Export Controls Act provides that the 'functions' the Department of Commerce exercises under that Act 'shall not be subject to' the judicial review sections of the APA.").

Therefore, because Plaintiffs rely exclusively on the common law to bring their *ultra vires* claim and because they make no showing that the claim is cognizable under Fifth Circuit precedent, it is unlikely that Plaintiffs would succeed on the merits.

### 2. Even if Plaintiffs' common law *ultra vires* claim is cognizable, Plaintiffs cannot satisfy its demanding standard.

Plaintiffs contest the SEC's statutory authority to investigate them. But even if the SEC was wrong in its interpretation and application of the law, this would not support a conclusion that the SEC has acted without any statutory authority. To prevail on a common law *ultra vires* claim, "a plaintiff must 'do more than simply allege that the actions of the officer are illegal or unauthorized.'" *Danos*, 652 F.3d at 583 (quoting *Ala. Rural Fire Ins. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir. 1976)). Rather, he "must allege facts sufficient to establish that the officer was

6

acting 'without any authority whatever,' or without any 'colorable basis for the exercise of authority.'" *Id*. (quoting *Pennhurst*, 465 U.S. at 101 n.11).

Here, the SEC's authority to investigate is found in Section 21(a) the Exchange Act. 15 U.S.C. § 78u(a)(1). Under that law, the SEC "may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate any provision of this chapter." *Id.* Because the Exchange Act commits decisions to investigate to the SEC's discretion—even decisions about *whether* someone has violated securities laws—there is no standard by which the SEC's decision to investigate might be reviewed. Put differently, it is not a standard by which a court could definitively say that the SEC, by investigating someone, has exceeded its statutory authority. Thus, Plaintiffs' *ultra vires* claim could not succeed on the merits.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs have not demonstrated a likelihood of success on the merits. Because Plaintiffs fail to show a likelihood of success on the merits, the Court need not consider the other requirements for a temporary restraining order or preliminary injunction. Accordingly, Plaintiffs' Motion for a Preliminary Injunction is **DENIED**.

**SO ORDERED** this **17th day of November, 2024.**

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE