UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BROADSTREET, INC., et al., | § § | |
| Plaintiffs, | § § | |
| vs. | § § § | Civil Action No. 4:24-cv-00803-O |
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs' Motion for Emergency Temporary Restraining Order and Anti-Suit Injunction ("Emergency Motion") (ECF No. 69), Defendant's ("SEC") Response (ECF No. 79), and Plaintiffs' Reply (ECF No. 81). Because the Court determines that the suit is not ripe and the Court lacks subject matter jurisdiction, the Court **DISMISSES without prejudice** Plaintiffs' suit in its entirety. Accordingly, Plaintiffs' Emergency Motion is **DENIED as moot**.

I.   BACKGROUND

This action began as a challenge to the SEC's investigation of a private equity company, its sub-entities, and three individuals at the helm of those entities. Those individuals and entities under investigation—Broadstreet, Inc. ("BSI"); Broadstreet Global Fund, LLC ("BSGF"); Broadstreet Global Management, LLC ("BSGM"); David Feingold; Joseph Baldassarra; and Steven Baldassarra (collectively, "Plaintiffs")—sued the SEC for declaratory and injunctive relief, alleging that it was beyond the SEC's statutory authority to investigate Plaintiffs.[1]

---

[1] *See* Pls.' Compl. 1, ECF No. 1.

In conjunction with filing this lawsuit, Plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction, asking this Court to halt the SEC's investigation.[2] The Court held a hearing, in which Plaintiffs stated they were only relying on a common law *ultra vires* claim in support of their Motion.[3] The Court denied Plaintiffs' request, reasoning it was unlikely Plaintiffs' common law *ultra vires* claim was legally cognizable, and even if it were, Plaintiffs could not satisfy its demanding standard.[4]

Plaintiffs filed an interlocutory appeal of that decision, which is currently pending before the Fifth Circuit.[5] Plaintiffs also filed an Amended Complaint, alleging a new legal theory in support of their *ultra vires* claim under the Administrative Procedure Act ("APA").[6] The SEC moved to dismiss Plaintiffs' Amended Complaint, which is pending before this Court.[7]

Notably, the day before the SEC filed its Motion to Dismiss in this case, the SEC initiated an enforcement action against Plaintiffs in the Southern District of Florida.[8] In that action, the SEC alleges that Plaintiffs used fraudulent tactics to raise more than $1 billion from investors; the SEC seeks permanent and preliminary relief, including an asset freeze and the appointment of a receiver.[9]

In this Court, Plaintiffs filed an Emergency Motion for Temporary Restraining Order and Anti-Suit Injunction, seeking to block the enforcement action from proceeding.[10] In that Motion, Plaintiffs argue: the SEC did not issue a Wells Notice beforehand; the SEC strategically initiated

---

[2] *See* Pls.' Mot. for TRO and Prelim. Inj., ECF No. 4-4.
[3] *See* Min. Entry, Nov. 14, 2024, ECF No. 36.
[4] Order 4–7, ECF No. 38.
[5] *See* Notice of Appeal, ECF No. 40.
[6] *See* Pls.' Am. Compl., ECF No. 51.
[7] *See* Def.'s Mot. to Dismiss Am. Compl., ECF No. 65.
[8] *See* Def.'s App. in Supp. of its Opp. to Pls.' Emergency Mot. for TRO & Prelim. Anti-Suit Inj., Ex D., ECF No. 80-1.
[9] *See id.* at Apps. 19–21.
[10] *See* Pls.' Emergency Mot. for TRO & Prelim. Anti-Suit Inj., ECF No. 69.

its enforcement action in another federal court, instead of as a counterclaim in this action; and the SEC lacks authority to regulate Plaintiffs.[11] Namely, Plaintiffs argue that the "sanctions the SEC seeks affect the freedoms of a private fund that produces returns satisfactory to its sophisticated investors, as well as Feingold (not part of the private fund) and BSI (also not part of the private fund)."[12]

On February 4, 2025, Plaintiffs filed a supplement to their Emergency Motion, notifying the Court that the SEC asked the court in Florida for an asset freeze and appointment of a receiver by February 6, 2025, and requesting the immediate entry of an order by this Court.[13] Before the Court can reach that Motion, it has a duty to examine its subject matter jurisdiction.

## II.   LEGAL STANDARD

If a court determines that it lacks subject matter jurisdiction, it must dismiss the action. FED. R. CIV. P. 12(h)(3). A court may find subject matter jurisdiction is lacking from "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

"Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). Under Article III of the Constitution, federal courts are confined "to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). Accordingly, "[a] court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Monk v. Huston,* 340 F.3d 279, 282 (5th Cir. 2003).

---

[11] *Id.* at 2–3.
[12] *Id.* at 3.
[13] Pls.' Time-Sensitive Suppl. Mem. in Supp. of Emergency Mot. for TRO & Prelim. Anti-Suit Inj., ECF No. 76.

## III. ANALYSIS

Plaintiffs initiated this lawsuit to preempt the SEC from filing an enforcement action against them. But Plaintiffs do not carry their burden of establishing this Court's subject matter jurisdiction. *See Ramming*, 281 F.3d at 161. Since the inception of this case, the SEC has maintained that sovereign immunity and ripeness foreclose judicial review of Plaintiff's suit.[14] The SEC reasserts that the Court lacks subject matter jurisdiction in response to Plaintiffs' Emergency Motion.[15] Plaintiffs do not address the Court's jurisdiction in either their Motion or Reply. In fact, Plaintiffs state they "move to enjoin [the SEC] from continuing to subvert this Court's jurisdiction" *without ever establishing that this Court has jurisdiction*.[16]

Plaintiffs have all but conceded that if an enforcement action were filed, this Court's decision in *Consensys Software, Inc. v. SEC* would govern—rendering Plaintiffs' claims unripe.[17] No. 4:24-CV-00369-O, 2024 WL 4438969, at *3–5 (N.D. Tex. Sept. 19, 2024). Now that the SEC has initiated an enforcement action against Plaintiffs in federal court and Plaintiffs ask this Court for emergency relief to enjoin the enforcement action, the Court must address whether Plaintiffs'

---

[14] *See* Def.'s Opp. to Pls.' Mot. for TRO & Prelim. Inj. 9–20, ECF No. 18-2; Def.'s Mot. to Dismiss Pls.' Am. Compl. 9–24, ECF No. 65; Def.'s Opp. to Pls.' Emergency Mot. for TRO & Prelim. Anti-Suit Inj. 6–7, ECF No. 79. The Court has yet to address these jurisdictional issues because in its prior Order resolving Plaintiffs' Motion for a TRO and Preliminary Injunction, the Court only had occasion to address sovereign immunity in the context of the single claim Plaintiffs advanced. *See* Order 4–6, ECF No. 38.
[15] *See* Def.'s Opp. to Pls.' Emergency Mot. for TRO & Prelim. Anti-Suit Inj. 6–7, ECF No. 79.
[16] Pls.' Emergency Mot. for TRO & Prelim. Anti-Suit Inj. 1, ECF No. 69.
[17] "In *Consensys*, the SEC had already brought an enforcement action against the plaintiff. . . . Here, on the other hand, no enforcement action has been brought, and the verified and undisputed factual record establishes a clear and credible threat of future prosecution." Pls.' Reply in Supp. Mot. TRO & Prelim. Inj. 6, ECF No. 28-3 (citation omitted). "This Court also found in *Consensys* that the already pending enforcement action allowed the plaintiff to test its theories, further mitigating *Consensys*' hardship. [] Here, unlike *Consensys*, there is no such avenue." *Id.* (citation omitted).

case is ripe for the Court's decision. *See Lopez*, 617 F.3d at 341. For the reasons given below, the Court determines that it is not.

The ripeness doctrine "separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). The "basic rationale" underlying the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967). "A declaratory judgment action is ripe for adjudication only where an actual controversy exists." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (internal quotation marks and citation omitted). "Ripeness is a twofold inquiry that requires courts to 'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Walmart Inc. v. DOJ*, 21 F.4th 300, 311 (5th Cir. 2021) (quoting *Abbott Lab'ys*, 387 U.S. at 149).

### A. Fitness of the Issues for Judicial Decision

Plaintiffs are unable to satisfy the first ripeness prong—that their claims are fit for judicial review. To determine fitness, courts consider three factors: "whether the issue presented is a purely legal one, whether consideration of that issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Id.* (quoting *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 435 (D.C. Cir. 1986)). Failure to show even one of these three factors "can render a case unfit for judicial review." *Id.* Here, Plaintiffs fail on all three factors.

First, the questions presented here are not purely legal. Indeed, as the SEC argues, "Plaintiffs are not seeking a declaration about the meaning of a specific legal provision."[18] Rather,

---

[18] Def.'s Mot. to Dismiss Pls.' Am. Compl. 19, ECF No. 65.

they seek a declaration as to the scope of the securities laws and precedents in the context of this case. A question of statutory interpretation "as applied" to this case (for example, whether Feingold is a control person of BSGF or BSGM) necessarily requires exploration and development of the underlying factual issues. Therefore, Plaintiffs raise, at best, mixed questions of law and fact, and the facts are not sufficiently explained.

Second, even if the record in this case sufficiently details the facts needed for this Court to make certain declarations—like whether Feingold is a control person—that is not the case for the other declarations Plaintiffs seek. They are much more sweeping in scope, for example, "that B.S.I., BSGF, Joe Baldassarra, and Steven Baldassarra are not subject to the S.E.C.'s regulation."[19] The Court knows little about those Plaintiffs, and, until this point, was oblivious to the specific securities laws they allegedly violated. On the other hand, the SEC's allegations against Plaintiffs are spelled out in its enforcement action in Florida, so "[Plaintiffs have] the ability to test the [SEC's] regulatory position in court by raising its theories as defenses in the [Florida] action." *Walmart Inc.*, 21 F.4th at 313. Therefore, the Southern District of Florida provides a more concrete setting for consideration of the issues.

Third, Plaintiffs cannot identify final agency action. In *Walmart*, the Circuit evaluated "whether the agency's action [was] *sufficiently* final." *Id.* at 311 (quoting *Ciba-Geigy Corp.*, 801 F.2d at 435 (emphasis added)). But later, the Circuit stated that the plaintiff "identified no *final* agency action." *Id.* (emphasis in original). Despite this difference in semantics, courts construe the finality requirement "within the meaning of § 10 of the Administrative Procedure Act, 5 U.S.C. § 704." *Abbott Lab'ys*, 387 U.S. at 149. The APA provides judicial review of "final agency action

---

[19] Pls.' Am. Compl. 44, ECF No. 51.

for which there is no other adequate remedy in a court." 5 U.S.C. § 704. This analysis applies "regardless of whether suit is brought under the APA." *Walmart Inc.*, 21 F.4th at 311 n.10.

Courts have distilled two prerequisites for an action to be considered final: (1) "the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature;" and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 853 (5th Cir. 2022) (citations omitted).

At best, Plaintiffs could argue that the SEC's filing of an enforcement action is "the consummation of the agency's decisionmaking process," "from which legal consequences will flow." *Id.* But precedent is not in Plaintiffs' favor. Relying on *Dow Chemical v. EPA*, this Court in *Consensys* held that the enforcement actions there were not final agency actions. 2024 WL 4438969, at *4 (citing 832 F.2d 319, 325 (5th Cir. 1987)). And the Fifth Circuit in *Dow Chemical* relied on a Supreme Court case, *FTC v. Standard Oil Company of California*, which held that filing an enforcement action was not final agency action. 832 F.2d at 325 (citing 449 U.S. 232, 239–45 (1980)).

In sum, Plaintiffs' inability to succeed on these three factors renders their claims unfit for judicial review.

### B. Hardship of Withholding Court Consideration

Plaintiffs also fail to satisfy the second ripeness prong—that they will suffer hardship from the Court withholding review of their claims. The SEC relies on *Walmart Inc. v. DOJ* to argue that its enforcement action "eliminates any cognizable hardship."[20] 21 F.4th at 311. There, Walmart sued the Department of Justice ("DOJ") under the Declaratory Judgment Act requesting "several

---

[20] Def.'s Mot. to Dismiss Pls.' Am. Compl. 21, ECF No. 65.

7

declarations about the precise limits" of its obligations under the Controlled Substances Act. *Id.* at 306. The DOJ then brought an enforcement action against Walmart in Delaware, a different jurisdiction than where Walmart's suit was pending. *Id.* The DOJ moved to dismiss for lack of jurisdiction arguing, among other things, that Walmart's claim was unripe. *Id.* at 307.

In considering whether Walmart would suffer hardship from the district court withholding consideration of the suit, the Fifth Circuit explained that "the existence of the Delaware litigation eliminates, or at least greatly reduces, the hardship that will be placed on Walmart." *Id.* at 312. The Circuit reasoned that "Walmart has the ability to test the [DOJ's] regulatory position in court by raising its theories as defenses in the Delaware action." *Id.* at 313. Moreover, there was "no clear or credible threat of future prosecution" given that an enforcement action had already been filed. *Id.*

Again, precedent is not in Plaintiffs' favor, as the facts here are nearly identical to those in *Walmart* and *Consensys*. In *Consensys*, this Court relied on *Walmart* to conclude that the plaintiffs could not show hardship given a pending enforcement action against them. 2024 WL 4438969, at *4–5. Indeed, here, Plaintiffs have already indicated that *Consensys* would bind the Court in this situation.[21] In an attempt to distinguish *Consensys* earlier in this litigation, Plaintiffs emphasized that the SEC had *not* filed an enforcement action.[22] In doing so, Plaintiffs signaled that if the SEC had filed an enforcement action, then *Consensys* would require a different outcome.[23] Therefore, given that the SEC has now filed an enforcement action, Plaintiffs cannot show that they would suffer hardship.

---

[21] *See* Pls.' Reply in Supp. Mot. TRO & Prelim. Inj. 6, ECF No. 28-3.
[22] *Id.*
[23] *Id.*

Plaintiffs' inability to show hardship, in addition to their inability to show that their claims are fit for judicial review, renders this case unripe for the Court's decision. Therefore, the Court determines that it lacks subject matter jurisdiction. *See Lopez*, 617 F.3d at 341.

## IV.   CONCLUSION

Because the suit is not ripe, the Court **DISMISSES without prejudice** Plaintiffs' case in its entirety. The Court shall issue a final judgment separately.

**SO ORDERED** on this **6th day** of **February, 2025**.

*[signature: Reed O'Connor]*
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**